**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **NICHOLAS LISOTTO,**<br>**Plaintiff,**<br>**v.**<br>**PAUL FUERST, et al.,**<br>**Defendants.** | ) | **Civil Action No.**<br>**25-13243-FDS** |

**MEMORANDUM AND ORDER ON**
**DEFENDANTS' MOTION TO DISMISS**

**SAYLOR, J.**

This is a case involving alleged negligence and fraud committed by an accounting professional. Jurisdiction is based on diversity of citizenship. Plaintiff Nicholas Lisotto hired defendant Paul Fuerst, a certified public accountant, to represent him in connection with federal and Massachusetts tax audits. At the time, Fuerst was a principal of defendant Fuerst and Associates, P.A. ("FAP"). In 2022, Fuerst switched employers to work for defendant Fuerst & Mortimer, P.C. ("FMP").

In 2019, the IRS began an audit of Lisotto's tax returns. In May 2019, Lisotto engaged Fuerst to represent him. On May 15, 2020, the IRS notified Lisotto that Fuerst had provided the IRS neither his power of attorney nor additional requested information. The complaint alleges that Fuerst repeatedly assured Lisotto that he was working on those issues, including saying that he had provided all the required information, communicated with the IRS, resolved his tax audit, and filed forms. According to the complaint, however, between 2023 and 2025, Lisotto received escalating notices of tax liabilities and threats of liens. Lisotto repeatedly followed up with

Fuerst, who allegedly responded by apologizing, promising follow-ups, and claiming that he was making progress with the IRS. The complaint further alleges that beginning as early as July 2022, Lisotto repeatedly requested that Fuerst return his client file and related tax records. On December 2, 2025, Lisotto received some documents from Fuerst, but those were allegedly just a small subset of the total requested documents. The complaint alleges that the documents did not indicate that Fuerst ever followed up with the IRS.

The complaint asserts eight claims: that defendants (1) violated the standard of care required of a CPA and were thus negligent in their handling of plaintiff's tax matters (Count 1); (2) fraudulently concealed material facts they had a duty to disclose regarding unperformed work on plaintiff's tax matters (Count 2); (3) made false statements of material fact on which plaintiff relied to his detriment (Count 3); (4) negligently misrepresented material facts on which plaintiff relied to his detriment (Count 4); (5) violated Mass. Gen. Laws ch. 112, § 87E and regulations of the Code of Ethics and Rules of Professional Conduct of the Massachusetts Board of Public Accountancy, which constitutes negligence *per se* (Count 5); (6) violated Mass. Gen. Laws ch. 93A, § 2 and § 9 by mishandling plaintiff's tax issues, and engaging in acts of misrepresentation and concealment (Count 6); (7) violated their statutory obligation to furnish plaintiff the client file (Count 7); and (8) are liable for exemplary damages under Ohio Revised Code § 2315.21 (Count 8).[1]

[1] This case presents a potential choice-of-law issue, specifically whether Massachusetts or Ohio law applies. *See* Restatement (Second) of Conflict of Laws § 145 (Am. Law Inst. 1971) ("The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties."). However, because neither party has briefed that issue, the Court will not dismiss any claims for that reason at this stage.

Defendants have moved under Fed. R. Civ. P. 12(b)(6) to dismiss for failure to state a claim upon which relief can be granted. FAP and FMP have also moved under Fed. R. Civ. P. 12(b)(5) to dismiss all claims against them for insufficient service of process.

For the following reasons, the motion to dismiss for failure to state a claim will be granted as to Count 5 and otherwise denied, and the motion to dismiss for insufficient service of process will be granted as to FMP and denied as to FAP.

## I. <u>Factual Background</u>

The following facts are set forth as alleged in the complaint.

In May 2019, Nicholas Lisotto retained the accounting services of defendant Paul Fuerst, a certified public accountant. (Am. Compl., Dkt. No. 15 ¶ 6). Fuerst was hired to represent Lisotto in connection with federal and Massachusetts tax audits relating to tax years 2017 and 2018. (*Id.* ¶ 6).

At the time, Fuerst was a principal of defendant Fuerst and Associates, P.A. ("FAP"). (*Id.* ¶ 7). In 2022, Fuerst switched employers to work for defendant Fuerst & Mortimer, P.C. ("FMP"). (*Id.*). The complaint alleges that Lisotto "relied entirely" on Fuerst to manage the audits and communicate with authorities. (*Id.* ¶ 9).

On May 15, 2020, an IRS Taxpayer Advocate contacted Lisotto. (*Id* ¶ 10). The Advocate advised Lisotto that Fuerst had not provided the IRS either his power of attorney or additional requested information. (*Id.*). Lisotto then contacted Fuerst, who allegedly assured him that he had submitted to the power of attorney three times over the prior nine months. (*Id.*). The complaint also alleges that he repeatedly assured Lisotto that he had sent the additional requested information to the IRS. (*Id.* ¶ 11). Lisotto requested that Fuerst respond to the Advocate's requests. (*Id.* ¶ 12). Fuerst allegedly failed to do so. (*Id.*).

From 2020 to 2022, Lisotto repeatedly contacted Fuerst, notifying him that various IRS and Massachusetts Department of Revenue deadlines had passed. (*Id.* ¶ 13-22). According to the complaint, Fuerst assured Lisotto that he was working on those issues. (*Id.* ¶ 14). Specifically, in August and September 2021, Fuerst told Lisotto that he had contacted the IRS and provided all required documentation. (*Id.* ¶ 52). On November 1, 2022, he told Lisotto that he would send him a review package. (*Id.*). On December 6, 2022, he told Lisotto that he had communicated with the IRS and resolved the 2017 audit. (*Id.* ¶ 16). He also told Lisotto that he filed a 12661 form, and that he should receive a response from the IRS within 30 to 60 days—a confirmation that Lisotto alleges he never received. (*Id.* ¶ 16).

According to the complaint, between 2023 and 2025, Lisotto received escalating notices of tax liabilities and threats of liens. (*Id.* ¶ 20). Specifically, the IRS told Lisotto that he owed more than $32,000 in penalties and interest and that no offer in compromise had been filed. (*Id.*). Lisotto repeatedly followed up with Fuerst, emphasizing that his ability to open a business was harmed by the lien risk. (*Id.*). Fuerst responded by apologizing, promising follow-ups, and claiming that he was making progress with the IRS or soon would. (*Id.* ¶ 21). Specifically, Fuerst allegedly told Lisotto to "trust [him]," telling him that "this is typical" and "even though it appears that I'm neglectful, I'm not." (*Id.* ¶ 14). The complaint also alleges that Fuerst told Lisotto that one of his biggest clients had once "threatened to kill him," but that he was able to get his audit overturned after without any payment or fines after several years of work. (*Id.* ¶ 15). In April 2025, Fuerst allegedly told Lisotto that he had filed or would file an offer in compromise, an agreement with the IRS that would let Fuerst settle his tax debt for less than the full amount he owed. (*Id.* ¶ 46). He also told Lisotto in June 2025 that he had spoken with the IRS by telephone concerning the matter. (*Id.* ¶ 46).

The complaint also alleges that Lisotto repeatedly requested that Fuerst return his client file and related tax records. (*Id.* ¶ 22). Fuerst ignored those requests and did not provide the requested documents. (*Id.*). Lisotto alleges that this precluded him from pursuing alternate avenues to address his tax liabilities and mitigate associated harms. (*Id.* ¶ 29-30). In September 2025, Lisotto formally demanded through counsel that Fuerst turn over his client file under Mass. Gen. Laws ch. 112, § 87E. (*Id.* ¶ 23). However, Fuerst's counsel insisted that "any additional information [would] only be produced through formal discovery." (*Id.* ¶ 24).

On December 2, 2025, Lisotto received some documents from Fuerst. (*Id.* ¶ 26). According to the complaint, those were just a small subset of the total requested documents. (*Id.* ¶¶ 26-27). It also alleges that the documents did not indicate that any follow-ups with the IRS had ever been done or that an offer in compromise had ever been submitted.

The complaint alleges that virtually no work was performed after October 2020. (*Id.* ¶¶ 26, 65). It also alleges that Fuerst's conduct caused Lisotto to incur additional penalties and interest, lose opportunities for tax and administrative relief, suffer adverse credit and business consequences, and experience emotional distress. (*Id.* ¶ 28-31).[2]

## II. <u>Procedural Background</u>

Plaintiff filed this action on November 3, 2025, followed by an amended complaint on December 4, 2025. All defendants (Paul Fuerst, FAP, and FMP) have moved to dismiss the amended complaint for failure to state a claim upon which relief can be granted. Defendants FAP and FMP have also moved to dismiss all claims against them for insufficient service of process.

[2] The complaint alleges that Fuerst failed to respond to Massachusetts Department of Revenue deadlines, but does not directly allege damages resulting from those missed deadlines. Because defendants do not contest that issue, the Court does not reach the question of whether the complaint plausibly pleads harm as a result of missed state tax deadlines.

## III. **Analysis**

All defendants contend (1) that all claims must be dismissed because they are time-barred; (2) that all claims must be dismissed because plaintiff failed to allege damages caused by defendants; (3) that all claims must be dismissed because the complaint fails to state a claim against FAP and FMP; (4) that Counts 1 through 5 must be dismissed because the complaint fails to properly plead contract claims; (5) that Counts 2 and 3 must be dismissed because the complaint fails to state a claim for fraud; (6) that Count 6 must be dismissed because plaintiff fails to state a claim for violation of Chapter 93A; (7) that Count 7 must be dismissed because plaintiff is not entitled to injunctive relief; and (8) that Count 5 must be dismissed for failure to adequately plead a claim of negligence *per se*. FAP and FMP also contend that all claims against it must be dismissed for insufficient service of process.

### A. **The Motion to Dismiss for Failure to State a Claim**

To survive a motion to dismiss under Rule 12(b)(6), the complaint must state a claim that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). When determining whether a complaint satisfies that standard, a court must "take the complaint's well-pleaded facts as true, and . . . draw all reasonable inferences in the plaintiff's favor." *Lowe v. Mills*, 68 F.4th 706, 713 (1st Cir. 2023) (quoting *Frese v. Formella*, 53 F.4th 1, 5 (1st Cir. 2022)) (citation modified). Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain

recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Médico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

### 1. <u>**Statute of Limitations**</u>

First, defendants contend that all claims must be dismissed because they are time-barred. Under Massachusetts law, claims brought against certified public accountants are governed by a three-year statute of limitations. Mass. Gen. Laws ch. 260, § 4. A Chapter 93A claim is subject to a four-year limitations period. Mass. Gen. Laws ch. 260, § 5A. The limitations period begins to run "when a plaintiff discovers, or any earlier date when she should reasonably have discovered, that she has been harmed or may have been harmed by the defendant's conduct." *Bowen v. Eli Lilly & Co.*, 408 Mass. 204, 205-06 (1990). "[T]he limitations period is tolled until 'events occur or facts surface which would cause a reasonably prudent person to become aware that she or he had been harmed.'" *Epstein v. C.R. Bard, Inc.*, 460 F.3d 183, 187 (1st Cir. 2006) (quoting *Felton v. Labor Relations Com'n*, 33 Mass. App. Ct. 926, 598 (1992)). "A plaintiff is considered to be on 'inquiry notice' when the first event occurs that would prompt a reasonable person to inquire into a possible injury at the hands of the defendant." *Id.* (citing *Szymanski v. Boston Mut. Life Ins. Co.*, 56 Mass. App. Ct. 367, 370-71 (2002)). "In most instances, the question when a plaintiff knew or should have known of its cause of action is one of fact that will be decided by the trier of fact." *Taygeta Corp. v. Varian Assocs., Inc.*, 436 Mass. 217, 229 (2002).

Defendants contend that the claim accrued in 2020 because plaintiff learned at that point that Fuerst was "not doing any work" and thus should have reasonably known that he had been injured. Specifically, defendants point to the allegations in the complaint that in May 2020 an

IRS Taxpayer Advocate informed plaintiff directly that Fuerst had failed to submit required documents.

An accountant "is an expert, and much of his work is done out of the client's view." *Hendrickson v. Sears*, 365 Mass. 83, 90 (1974). Therefore, a client cannot always "be expected to recognize professional negligence if he sees it, and he should not be expected to watch over the professional or to retain a second professional to do so." *Id.* Furthermore, the complaint alleges that Fuerst made various lulling statements—specifically, that he repeatedly represented, over the course of a five-year period, that he was actively managing plaintiff's tax affairs. Because of Fuerst's status as an accounting professional, it is at least plausible that plaintiff reasonably relied on those representations.

Accordingly, the complaint plausibly alleges that plaintiff was not on notice of a potential cause of action when he was first contacted by the IRS in 2020.

**2. <u>But-For Causation</u>**

Defendants next contend that all counts must be dismissed because the complaint does not adequately plead that Fuerst's alleged conduct was the but-for cause of his damages. For a negligence, fraud, or Chapter 93A claim to succeed, plaintiffs must show that defendants' wrongdoing was the but-for cause of the harm. *Doull v. Foster*, 487 Mass. 1, 7 (2021) (applying but-for causation to a negligence claim); *Poly v. Moylan*, 423 Mass. 141, 145 (1996) (same, for a malpractice claim); *Greene v. Philip Morris USA Inc.*, 491 Mass. 866, 873 (2023) (same, for a fraud claim); *Casavant v. Norwegian Cruise Line, Ltd.*, 76 Mass. App. Ct. 73, 77 (2009) (same, for a Chapter 93A claim).

Plaintiff contends that defendants are responsible for his tax liability, lost opportunities for appeal and relief, penalties and interest, diminished credit, impaired borrowing costs and business opportunities, and emotional distress. Defendants contend that they cannot be held

liable for plaintiff's tax liability because the complaint does not allege that the audits would have been resolved in a more favorable manner had Fuerst used adequate skill and care. Because the rest of the alleged harms are downstream of that tax liability, defendants contend that the complaint has not sufficiently pleaded that defendant's alleged behavior was the but-for cause of those harms.

It is true that when a plaintiff would have had to "pay the tax [he] should have paid in the first instance," the accountant cannot be liable for that amount. *Miller v. Volk*, 63 Mass. App. Ct. 303, 305 (2005). Here, however, plaintiff has alleged sufficient facts to support the inference that he contests the underlying tax liability. Specifically, he alleges that he hired defendants to "safeguard his interests as a part of resolving the audits." Plaintiff also alleges that, because of defendants' wrongdoings, he lost his federal refund and multiple avenues of administrative appeal. Together, those allegations support the inference that plaintiff believes his audits were erroneous and appealable. And even where a defendant did not cause the underlying liability in the first instance, malpractice may cause that liability to become a compensable loss where the defendant negligently forecloses an available opportunity to eliminate it. *See Glob. NAPs, Inc. v. Awiszus*, 457 Mass. 489, 501 (2010) (finding causation where malpractice foreclosed a successful appeal and thereby caused the client to pay an otherwise avoidable judgment).

Moreover, an accountant need not cause a client's underlying tax liability to be liable for additional injuries suffered from improper management of his tax affairs. *See, e.g.*, *Miller*, 63 Mass. App. Ct. at 305-06 (distinguishing underlying tax liability from penalties and interest attributable to negligent tax preparation); *RTR Techs., Inc. v. Helming*, 707 F.3d 84, 92 (1st Cir. 2013) (holding that a tax deficiency alone does not establish malpractice damages, but separately considering penalties and lost profits allegedly caused by the accountant's conduct). While "a

plaintiff may not recover for damages that were avoidable by the use of reasonable precautions on his part," *Burnham v. Mark IV Homes, Inc.*, 387 Mass. 575, 586 (1982), here, the complaint alleges that Fuerst repeatedly misrepresented to plaintiff that he was working on the audits and withheld tax documents that plaintiff would have needed to resolve his tax issues. As a result, plaintiff was subject to additional harm. Accordingly, the complaint sufficiently pleads a claim for accounting negligence.

### 3. **Vicarious Liability**

Defendants next contend that all claims against FAP and FMP must be dismissed because the complaint fails to allege a theory of liability under which they would be responsible for the wrongdoing of Fuerst. A complaint must "at least set forth minimal facts as to who did what to whom, when, where, and why." *Educadores Puertorriqueños en Acción v. Hernández*, 367 F.3d 61, 68 (1st Cir. 2004). Pleadings that group defendants together are not automatically deficient. "At the motion to dismiss stage[,] a complaint generally will only be dismissed where it is 'entirely implausible' or impossible for the grouped defendants to have acted as alleged." *Zond, Inc. v. Fujitsu Semiconductor Ltd.*, 990 F. Supp. 2d 50, 53 (D. Mass. 2014).

Here, the complaint states clearly that Fuerst was employed by FMP and FAP when he committed his allegedly wrongful conduct. The complaint also alleges that Fuerst's alleged wrongdoings were committed while he was employed as an accountant at FAP and then at FMP. An employer "is liable for torts committed by employees while acting in the scope of their employment." *Dias v. Brigham Med. Assocs., Inc.*, 438 Mass. 317, 322 (2002) (quoting Restatement (Third) of Agency § 2.04 (Tent. Draft No. 2 2001)). The allegations of the complaint are therefore sufficient to state a claim against FAP and FMP.

**4. Breach of Contract**

Defendants next contend that the negligence and fraud claims fail because they were improperly pleaded as tort claims instead of contract claims. "Negligence in the manner of performing [a contractual duty], as distinguished from mere failure to perform it, causing damage, is a tort." *RTR Techs*, 815 F. Supp. at 432 (citing *Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co.*, 439 Mass. 387 (2003)). "[I]t is well established that Massachusetts courts apply tort law to such claims, despite the fact that they arise from a contractual relationship." *Id.*

The complaint does not merely allege that defendants breached a contract. Instead, it specifically alleges that defendant had a duty to provide plaintiff with tax services, failed to perform those services with reasonable care—including by missing deadlines and failing to pursue administrative remedies—and thereby caused plaintiff to incur losses. It also alleges that defendant knowingly misrepresented that he was performing the work, identifying specific instances of alleged lies and omissions, and that plaintiff relied on those misrepresentations to his detriment. Those allegations are sufficient to plead claims in negligence and fraud.

**5. Reasonable Reliance on Misrepresentation**

Next, defendants contend that the complaint fails to state a claim for fraud because their misrepresentations were so "palpably false" that plaintiff's reliance on them was unreasonable. For a fraud claim to succeed, plaintiff's reliance on defendants' misrepresentations "must be reasonable." *Masingill v. EMC Corp.*, 449 Mass. 532, 540 (2007). "[T]he reasonableness of a party's reliance ordinarily constitutes a question of fact for the jury." *Rodi v. S. New England Sch. Of L.*, 389 F.3d 5, 16 (1st Cir. 2004); *see also Marram v. Kobrick Offshore Fund, Ltd.*, 442 Mass. 43, 59 (2004).

Under the circumstance presented here, the fraud count will not be dismissed for lack of reasonable reliance. Among other things, the complaint alleges that although the IRS told

plaintiff that it had not received required documents, Fuerst repeatedly assured plaintiff that he was working on it. Based on the pleadings, plaintiff's alleged reliance on Fuerst's representations were facially reasonable, and are sufficient to form the basis of a plausible fraud claim.

**6. __Chapter 93A__**

Defendants next contend that the complaint fails to state a claim for a Chapter 93A violation because (1) it fails to allege unfair or deceptive practices and (2) fails to allege that a reasonable person would have been deceived.

First, defendants contend that because their actions would at most constitute a breach of contract, they could not have plausibly violated Chapter 93A. When determining whether a defendant's practice is "unfair" within the meaning of Chapter 93A, courts look to "(1) whether the conduct is within 'at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers' or other businesses." *H1 Lincoln, Inc. v. S. Washington St., LLC*, 489 Mass. 1, 14 (2022). A defendant's practice is "deceptive" if it possesses "a tendency to deceive." *Aspinall v. Philip Morris Companies, Inc.*, 442 Mass. 381, 394 (2004). Here, the complaint pleads more than a mere breach of contract. It alleges that defendants perpetrated a "years long-scheme of deceit," detailing specific instances of misrepresentations and wrongdoings. Those are sufficiently plausible allegations to suggest that defendants' actions were unfair and deceptive and thus in violation of Chapter 93A. *See Hyannis Anglers Club, Inc. v. Harris Warren Com. Kitchens, LLC*, 91 Mass. App. Ct. 555, 559 (2017) (holding that allegations of an employee's deliberate misrepresentations regarding unperformed work were sufficient to support a Chapter 93A claim).

Second, defendants contend that the Chapter 93A claim is deficient because the alleged deception was so "palpable" that it could not have deceived a reasonable consumer. For a Chapter 93A claim to survive dismissal, a plaintiff must plausibly allege the potential deception of "a reasonable consumer." *Tomasella v. Nestle USA, Inc.*, 364 F. Supp. 3d 26, 35 (D. Mass. 2019) (citing *Aspinall v. Philip Morris Companies, Inc.*, 442 Mass. 381, 394-96 (2004)). Whether a challenged practice has the capacity to mislead a reasonable consumer is ordinarily "a question of fact." *Chervin v. Travelers Ins. Co.*, 448 Mass. 95, 112 (2006); *Dumont v. Reily Foods Co.*, 934 F.3d 35, 40 (1st Cir. 2019) (quoting *Aspinall*, 442 Mass. at 396). Here, the complaint alleges that Fuerst repeatedly encouraged plaintiff to trust him and assured him that any errors in his work would be corrected. Again, under the circumstances, reliance on those representations was plausibly reasonable.

**7. <u>Injunctive Relief</u>**

Defendants further contend that the complaint fails to adequately plead a claim for injunctive relief because the files plaintiff seeks are already accessible and defendants have no legal obligation to furnish them to him. However, the complaint alleges that the files he seeks are unavailable to him and are under the control of defendants. That is a plausible allegation that at a minimum raises a question of fact that is not appropriate for resolution at this stage.

**8. <u>Negligence *Per Se*</u>**

Finally, defendants contend that Count Five, which alleges negligence *per se*, must be dismissed because statutory violations do not constitute negligence *per se*. Defendants are correct. Massachusetts law does not recognize the doctrine of negligence *per se. Bennett v. Eagle Brook Country Store, Inc.*, 408 Mass. 355, 358-59 (1990) ("It has long been the rule in this Commonwealth that violation of a statute does not by itself establish a breach of duty, for it does not constitute negligence per se.") (citation omitted). Thus, while statutory violations are

evidence of negligence, there is no independent claim for negligence *per se* based on such a violation. Accordingly, the motion to dismiss Count 5 will be granted.

### B. The Motion to Dismiss for Insufficient Service of Process

FAP and FMP further contend that all claims against them should be dismissed for insufficient service of process. Defendants contend that they offered to waive service as to Fuerst and FAP, but not for FMP. However, instead of emailing the complaint and summons, plaintiff allegedly left the documents in the lobby of a building. *See, e.g.*, *Zond, LLC v. Fujitsu Semiconductor Ltd.*, 53 F. Supp. 3d 394, 397-98 (D. Mass. 2014) (finding insufficient service of process, as complaint and summons were left in office lobby rather than being deposited with an official registered agent). Plaintiff contends that defense counsel waived service for all three defendants, and that they were all properly served.

The evidence before the Court as to service of process on FAP and FMP is somewhat sparse. As to waiver of service, that evidence largely consists of emails between counsel. (*See* Dkt. Nos. 16-1, 20-2). On November 7, 2025, counsel for defendants advised by email that he was willing to "accept/waive" service for Fuerst and FAP, but not FMP. (Ex. 1, Dkt. No. 20-2). That is sufficient evidence of a waiver under Fed. R. Civ. P. 4(d). Counsel dispute whether the subsequent transmission of the complaint to counsel was proper—again, it was apparently left in an office lobby. But, once service has been waived, there is no specific procedure in Rule 4 as to how a copy of the complaint should be provided to opposing counsel (although ordinary professional courtesy would suggest that in normal circumstances an email attachment would be appropriate).

There was, however, no waiver of service as to FMP, and the docket reflects an unexecuted return of a summons as to that entity. (Dkt. No. 9). Because there is no evidence of service of process on FMP, to that extent the motion to dismiss will be granted without prejudice.

In summary, the motion to dismiss for insufficient service of process will be granted as to FMP, and otherwise denied.

## IV. Conclusion

For the foregoing reasons, the motion of defendants Paul Fuerst, Fuerst & Associates, P.C., and Fuerst & Mortimer, P.C. to dismiss for failure to state a claim is GRANTED as to Count 5 and otherwise DENIED. The motion of defendants Fuerst and Associates, P.C, and Fuerst & Mortimer, P.C., to dismiss for insufficient service of process is GRANTED as to defendant Fuerst & Mortimer, P.C., and otherwise DENIED.

**So Ordered.**

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
United States District Judge

Dated: September 29, 2026